Before State Industrial Commission, Respondent.

In the Matter of the Claim of Margaret Drummond, Mother, and Charles Drummond, Father, Respondents, for Compensation under the Workmen's Compensation Law, for the Death of Their Son, Arthur Drummond, *v*. Isbell-Porter Company, Employer, and Manufacturers' Liability Insurance Company, Insurance Carrier, Appellants.

Third Department, June 30, 1919.

Workmen's Compensation Law — scope of presumption that claim comes within statute — claim by father and mother residing in foreign country for death of son in this State — evidence insufficient to establish dependency — obligation of employer to parents of employee living in foreign country.

The presumption under section 21 of the Workmen's Compensation Law that a claim comes within the provisions of the statute does not reach to the claimants; they must establish by competent proof that the conditions exist which bring them within the statute.

Upon a claim by a father and mother residing in a foreign country for the death of a son in this State, evidence *held* insufficient to establish the jurisdictional facts as to whether the claimants are in fact entitled to compensation under the statute, and whether they have been " supported either wholly or in part, for the period of one year prior to the date of the accident " by the deceased.

Primarily the employer owes no legal obligation to the father and mother of a man of full age living in a foreign country.

All contributions of money to the father of a family and the husband of a wife are in a sense for the support of the family, but the occasional con-

tributions of an absent son are not, in ordinary usage, considered in this light, in the absence of facts which show that such contributions were relied upon as an element in the support of the family.

JOHN M. KELLOGG, P. J., dissented.

APPEAL by the defendants, Isbell-Porter Company and another, from a decision and award of the State Industrial Commission, entered in the office of said Commission on the 1st day of November, 1918.

*Lee & Brewster* [*P. Sidney Hand* of counsel], for the appellants.

*Charles D. Newton, Attorney-General* [*E. C. Aiken, Deputy Attorney-General*, of counsel], for the respondents.

WOODWARD, J.:

The deceased, Arthur Drummond, was a bricklayer. He came to his death while taking measurements from the top of a furnace, where it is assumed he stepped upon some recently laid bricks on the edge of the furnace wall, which, falling out of place, caused him to lose his balance and drop to the floor below, fracturing his skull and producing death.

So far as the record shows there was, in this accident, nothing on which an action of negligence could rest under the provisions of section 1902 of the Code of Civil Procedure, and the claimants here are the father and mother of the decedent, residing in England, and there are brothers and sisters living, who also reside in England. We call attention to these matters simply to emphasize the fact that the claimants can have no legal rights outside of those which depend upon the provisions of the Workmen's Compensation Law. The decedent, who appears to have been a citizen of England, twenty-seven years of age, was at work in the village of Massena, N. Y., when the accident occurred; he had the protection of the statute in so far as he was individually concerned, against any accident resulting in his disability. When the accident results in death, the benefits can only go to those who bring themselves within the provisions of sections 16 and 17 of the act (Consol. Laws, chap. 67 [Laws of 1914, chap. 41], §§ 16, 17, as amd. by Laws of 1916, chap. 622). There is a presumption that the claim comes within the provisions of the act (§ 21),

but this presumption does not reach to the claimants; he or she must establish that the conditions exist which bring them within the statute. Under subdivision 4 of section 16 of the act the death benefit, in the absence of surviving wife and children or dependent grandchildren, brothers and sisters under the age of eighteen years, goes to "the support of each parent, or grandparent, of the deceased, if dependent upon him at the time of the accident," such benefit being limited to twenty-five per centum of such wages to each of the persons described. By section 17 of the act the "dependents in any foreign country shall be limited to surviving wife and child or children, or, if there be no surviving wife or child or children, to surviving father or mother, or grandfather or grandmother, whom the employee has supported, either wholly or in part, for the period of one year prior to the date of the accident."

The primary purpose of the statute, of course, is the protection of the individual workman and his immediate family; his collateral obligations, not of a legal character, are incidental, and it seems to us that persons who claim under the provisions of the Workmen's Compensation Law are bound to bring themselves within the language, at least, of the act. In other words, whether Charles Drummond is, in fact, the father of decedent; whether there is a surviving wife or children, or others who are entitled under the statute, and whether he has been "supported, either wholly or in part, for the period of one year prior to the date of the accident," are jurisdictional in their nature, and must be supported by evidence of probative character, in order to justify the taking of the money of the employer and insurance carrier. Primarily the employer owes no legal obligation to the father and mother of a man of full age living in a foreign country; it is only by virtue of statute law that any right survives the death of the decedent in an accident of the character here under consideration, and until we know that Charles Drummond was "supported, either wholly or in part, for the period of one year prior to the date of the accident," there is no foundation for the award. A fact of this nature, if it exists, is capable of proof under ordinary circumstances; there certainly is no great difficulty in a man or woman telling the facts in reference to such alleged support, and there would seem to be no consideration

of policy which required the State Industrial Commission of the State of New York to strain after an excuse for charging our industrial life with an expense in favor of a resident of England, where the evidence does not meet the most ordinary requirements of proof.

The accident here under consideration occurred on the 19th day of September, 1917, and the period of investigation, therefore, goes back to the 19th day of September, 1916. We find in the record certain receipts for sums of money apparently sent to England from Massena, the first of these, within the period, being of November 9, 1916, for forty-eight dollars and seventy cents, and the second for the same amount, dated the 10th of February, 1917. It was more than six months after this last remittance that the accident occurred, but there is no evidence that any other or further remittance was made, and beyond this the receipts in evidence do not show that the decedent made these remittances, or that they were made to Charles Drummond. All that appears from these two receipts is that some one made two remittances to England at the dates mentioned, and the only connection established by the proof is that one John Hatton, administrator of the estate of Arthur Drummond, the deceased, makes an affidavit that " deponent found in the possession of said deceased at the time of his death, certain postal money order receipts for money sent by said deceased to his parents in England through the Massena postoffice," and that " said deceased told deponent that he was sending money home to his parents in England to help support them and that deponent has been to the postoffice in Massena in company with said deceased and saw him purchase money orders and remit money to his said parents, but did not know the amount of such orders."

There is no attempt to identify the particular remittances within the period between September 19, 1916, and one year later when the accident occurred. There are several of the receipts in the record for small amounts running back to 1915, 1914, and the affidavit may be absolutely true, and yet not refer to either of the receipts within the year which alone is important here. So if we give all the force to the hearsay testimony that it can be entitled to under the most liberal rules, it does not meet the requirement of proof that the

decedent made remittances to his father for the purpose of his support in whole or in part, during the year preceding the accident; and a loose, general affidavit of what the decedent may have told him is very far from the high character of evidence which is ordinarily necessary to take the money of one man and transfer it to another between whom there is not the slightest relationship. All contributions of money to the father of a family and the husband of a wife are in a sense for the support of the family, but the occasional contributions of an absent son are not, in ordinary usage, considered in this light, in the absence of facts which show that such contributions were relied upon as an element in the support of the family; and here we have no evidence whatever that any remittances were made by the decedent to the claimant during the year preceding the accident.

Turning then to the proofs offered from the other side of the water, we find the claimant writing the State Industrial Commission that " as to the proof that deceased supported me for at least a year prior to his death, I can only refer you to the declaration of my claim. I have not kept the letters from my son and as the money was sent by postal orders I have no means of proving the payment. * * * The deceased was the only son that we had who was not married and he lived with us up to the time he went to America. He sent money to us in varying amounts but not at any set periods. The contributions from my son were of material assistance to me in the maintenance of myself and my wife and in keeping the home together," but no facts are given from which we may properly infer that the claimant relied upon these " varying amounts but not at any set periods," although the Commission had written him telling him that " you are now asked to furnish information in the form of a sworn statement as to the conditions surrounding your manner of living and as to whether you and your wife are living together. Also more definite information as to what assistance was rendered you by the deceased and what use was made of such money forwarded."

The claimant evidently intends to be an honest, self-respecting man. The Commission tells him, " If you can furnish us with this proof as to how much you and your wife

really depended upon your son, and whether loss of this money will affect your standard of living, we think the carrier will waive his objections and pay the award;" and under this appeal the claimant tells us in an affidavit that his son left England in 1913, and that he was then receiving one pound, four shillings and six pence a week, and paying six shillings and nine pence a week rent; that he and his wife live together, and that "we have had no other source of income except my own wages and money sent to me from time to time by my said son." It appears from the record that he has three other sons who are married, besides a married daughter, so that he has reared a considerable family upon the wages he has received, and he tells us that he received during the war period an advance in his wages, and that he and his wife are entitled to a certain old age pension, which he has not been drawing, out of patriotic motives toward England. Much of the affidavit deals with matters since the death of the son, and he tells us in his affidavit of April, 1918, that owing to war prices "I and my wife could not have lived in ordinary decent comfort without the assistance we received from my said son who was in the habit of sending to me sums of ten pounds per quarter," and that the "money so sent to me was of great assistance to me and was spent exclusively in absolute necessities for our maintenance." But none of this comes to the matter in question; we are nowhere told that the decedent, in the year between September 19, 1916, and September 19, 1917, "supported, either wholly or in part," the claimant, and without this fact there is nothing to build upon. The most that can be inferred from the affidavit is that the claimant is an honest and industrious Englishman holding a humble job, paying him a little better now than in years past, and that his son in America was in the "habit of sending to me sums of ten pounds per quarter," but whether this habit persisted during the year in question is not disclosed, and there is no suggestion in the affidavit that the claimant was dependent upon these sums in that year. His affidavit speaks of the present time (April, 1918), some seven months after the son's death, for he tells us that "I am still engaged in the same works and I am now earning, with over-time and war bonus, an average of one pound fifteen shillings per week, but with my

present rent 7 shillings per week and the increased cost of coal, light, food, shoes and clothing due to the war I and my wife could not have lived in ordinary decent comfort," etc.; but what the conditions were between the dates above mentioned is not shown, nor does it appear that any contributions were made during that time. It appears from another affidavit in the record that the claimant had worked for his then employers twenty-seven years, and it is entirely obvious that he was receiving relatively the same compensation during 1916–1917 that he was during all his life, and it requires some evidence to show that with a grown-up family he was dependent upon these contributions of his son for the support of himself and his wife.

We find no evidence in the case which meets the requirements of the statute in reference to the support of the claimant, and as neither of these claims is within the provisions of the law, as the record stands, the award should be reversed and the claim dismissed.

All concurred, except JOHN M. KELLOGG, P. J., dissenting.

Award reversed and claim dismissed.